# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
## DOTHAN DIVISION

| | | |
|---|---|---|
| **SAMUEL ADAMS, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **1:06-cv-00950-MEF-WC** |
| | § | |
| **WAYNE FARMS, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>PLAINTIFFS' RESPONSE TO DEFENDANT"S REPLY TO PLAINTIFFS' RESPONSE (Doc. 44)</u>

Comes now Plaintiffs and respectfully request that this Court give no weight to the Defendant's Reply and enter an order denying Defendant's Motion to Stay. As grounds for said request, Plaintiffs aver that,

1.      The facts are simple, a) Plaintiffs filed this action first and under the first filed rule this action is not likely to be consolidated into the Mississippi *Agee* action, b) Plaintiffs in this action are in the best position to represent the rights of individuals at this specific location, c) Plaintiffs have made reasonable attempts to join *Agee* Plaintiffs in this action through communications with *Agee's* counsel, d) Plaintiffs have made attempts in good faith to avoid dual representation, e) There is no guarantee, absent the application for and the granting of MDL status, that the issues Defendant

complains of will ever be resolved because there is no statutory provision that precludes the *Agee* action and this action from proceeding as two separate collective actions, and f) Defendant's attempts to stall this litigation are causing putative class members to be harmed.

2.    Plaintiffs respectfully request the Court view Defendant's "Reply To Plaintiffs' Response to Defendant's Motion to Stay," filed February 27, 2007, for what it is, a smoke and mirror show, built on a web of half truths purposefully orchestrated for the sole purpose of discrediting Plaintiffs' counsel in this action.

3.    Defendant accuses Plaintiffs' counsel in Mississippi and Alabama of engaging in overlapping and successful solicitation of the same Wayne Farms employees.  Plaintiffs would like to remind the Court that the action at hand was filed nearly two months prior to the *Agee* action.  It would appear *Agee* counsel is engaging in overlapping solicitation of Alabama Wayne Farms employees.

4.    Defendant conveniently hides in footnote 3 on page 1 of their Reply that only two plaintiffs have dual representation, Mary E. Jones and Eddie Thomas.   In light of Defendants' rhetoric and their allegations that aggressive solicitation was ongoing causing the "mess at hand," the fact that

only two individuals ended up with dual representation is quite commendable.

5.     In a letter authored by Bill Hommel, *Agee* Plaintiffs' counsel, Mr. Hommel acquiesces that all but forty three Alabama Wayne Farms employees at four different Wayne Farms plants were represented by The Cochran Firm before his firm's involvement. *See* Exhibit 1. Mr. Hommel does not assert any Enterprise employees signed with his firm prior to signing with The Cochran Firm. *Id.* Furthermore, in an attempt to resolve any overlap or duplicative representation, Plaintiffs in this action contacted the Alabama State Bar's Ethics Section to receive an opinion on how to proceed.

6.     The Alabama State Bar recommended a joint letter from Plaintiffs' counsel in *Agee* and *Adams* notifying individuals of their dual representation and allowing them an opportunity to terminate the services of the firm which they do not wish to represent them. Plaintiffs have asked *Agee* counsel to transfer their clients to this action and for those with dual representation proposed a joint letter on three different occasions. *Agee's* counsel has refused to respond to all requests. *See* Exhibits 2-3. As an alternative, the Bar recommended sending a letter from The Cochran Firm only to those with dual representation if *Agee* counsel refused to cooperate, notifying them

of their dual representation asking them to confirm their counsel of choice. Plaintiffs have yet to send such a letter in order to give Mr. Hommel every opportunity to cooperate and do what is fair. *See* Exhibit 3.

7.    Defendant attempts in a slide of hand trick to use exhibits related to alleged misconduct involving, Mike Espy, and Richard Celler, to show or imply overreaching or that misconduct occurred in soliciting Mississippi clients and that the alleged misconduct is somehow relevant to issues before this Court involving The Cochran Firm. While Richard Celler is associated with the case at hand, pro hac vice, the exhibits attached to Defendant's Reply have no relevance in these proceedings and were not utilized by The Cochran Firm. Richard Celler has never met with an Alabama client, has had little to no involvement in the case at hand other than attending the Rule 26 meeting of the parties, has met attorneys at The Cochran Firm's Birmingham office on only one occasion and in no way is he, Morgan and Morgan or Mike Espy a part of The Cochran Firm. Furthermore, in conferring with Mr. Celler he has denied the truthfulness of the exhibited deposition and stated he was in Killington, VT during one of the Mississippi meetings in which Ms. Shirley Lindsey accuses him personally of misconduct. Mr. Celler wasn't even in the state as Ms. Lindsey alleges which raises the question, Why was Ms. Lindsey motivated to give such

testimony and by whom? It certainly wasn't Plaintiffs' counsel in this action!

8.    In another attempt to distract the Court from the merits of this case Defendant argues in a self serving statement that they did not act willfully or in bad faith when not paying employees appropriately. They ask this Court to take a limited look at employment at the Enterprise plant during the last twenty-four (24) month period. What they cleverly fail to bring to this Court's attention is that during that 24 month period, the Enterprise plant terminated 868 plant employees which equates to an extraordinary average annual turnover rate of **58%**. *See* Def.'s Reply Exhibit B. From this turnover number we can deduce one or combinations of several factors are at work here. One, pay practices may not be sufficient to ensure a stable work force. Two, working conditions may be hazardous or undesirable making it impossible to maintain a stable workforce. Thirdly, management may not treat their people appropriately thereby making it difficult to maintain a stable workforce. Regardless of the reasons for the high turnover, Defendants argument that only 78 individuals could be adversely affected by this stay is specious.

9.    Defendant tries to assert that there is no need to rush court supervised notice because only 78 individuals could be adversely affected by this stay.

To the contrary, based on this plant's high turnover rate and the distinct possibility that Defendant did act willfully since the Department of Labor has always maintained the activities at hand are compensable and therefore the three (3) year statute of limitations should apply. If it is found that Defendant did act in bad faith, 436 plus individuals could be negatively affected by this stay.

10.    Plaintiffs filed this collective action litigation against the Wayne Farms Enterprise plant individually versus filing a national or regional collective action, to follow the spirit of the FLSA 216(b) collective action provision and to ensure employees are similarly situated so they do not fall victim to decertification rulings as did other FLSA poultry cases filed pre *Alvarez* such as *Fox v. Tyson*, Case #4:99-CV-1612-VEH (N.D. Alabama), a national collective action and *Anderson v. Cagles, Inc.*, 2005 WL 3873160 (M.D. Georgia), a regional collective action. In these cases Plaintiffs' collective actions were not certified because the courts found that on a national or regional basis there were to many distinctions on a plant by plant basis due to differences in management personnel, bargaining unit employees vs. non-bargaining unit employees, different collective bargaining agreements, different payroll system software and hardware, and generally differences in location policies and procedures. In conversations

with the *Agee* action's counsel, it became apparent that they intend to gut the potential claims under Supreme Court's decision in *IBP v. Alvarez,* 126 S.Ct. 514 (2005), to try to ensure similarity on a national basis. For example, according to counsel, *Agee* does not intend to go after unpaid breaks or significant periods of walk time because those two issues can vary significantly plant to plant and will ultimately affect their similarly situated argument nationally. They intend to reduce clients' claims for compensable activities to 10 - 15 minutes a day, that otherwise in this action could be as much as 105 minutes a day. The *Agee* plaintiffs' counsel will have a wind fall in fees if their national collective action is successful but it will be at their clients' detriment. In bringing this action against the Enterprise plant and separate actions against each of Wayne Farms' other Alabama plants, Plaintiffs' counsel has subjected themselves to significantly higher costs of litigation than those incurred in a single national collective action such as *Agee.* This is not an accident and not a negative for Plaintiffs' counsel; it is the cost of ensuring what is best for the client is accomplished.

11.    Defendant is correct that Plaintiffs do not oppose their Motion to Apply the First Filed Rule. This litigation was filed on October 20, 2006. The *Agee* action was filed on December 13, 2006. Plaintiffs are in a better position to represent the interests of the collective class at this location and

request the Court consolidate Enterprise Alabama Wayne Farms employees participating in the *Agee* action into this action subject to the class definition as set forth in this action's complaint.

12.    Lastly, Plaintiffs in this action have grave concerns regarding defense counsel's motives.  In what appears to be a completely inappropriate move, Mr. Crutcher spent an entire deposition questioning one, and suspiciously only one *Agee* plaintiff, not on issues related to the merits of the *Agee* case but instead eliciting responses insinuating unethical practices while interjecting comments of his own dripping with sarcasm.  *See* Def.'s Reply Exhibit A.  After years of fighting national FLSA actions arguing cases should be brought on a plant by plant basis, is it possible that in this post *IBP v. Alvarez* environment where plaintiffs have brought actions on a plant by plant basis that Defendant is now interested in a blue light special offering to settle claims on a national basis pennies on the dollar?

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court deny Defendant's motion to stay, consolidate *Agee* plaintiffs from the Enterprise Alabama plant into this action and order the litigation proceed.

Dated:  March 5, 2007                    Respectfully submitted,

**THE COCHRAN FIRM, P.C.**

/s/ Robert J. Camp
**ROBERT J. CAMP**
BERNARD D. NOMBERG
LANCE SWANNER
SAMUEL A. CHERRY, JR.
505 North 20th Street, Suite 825
Birmingham, AL  35203
(205) 930-6900 (Phone)
(205) 930-6910 (Fax)

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2007, I electronically filed the

foregoing Motion with the Clerk of the District Court using the CM/ECF

system, which sent notification of such filing to:

Dorman Walker
dwalker@balch.com

Lisa J. Sharp
lsharp@balch.com

Wendy A. Madden
wmadden@balch.com

Pepper Crutcher, Jr.
pcrutcher@balch.com

/s/ Robert J. Camp
**ROBERT J. CAMP**

**EXHIBIT 1**

# WILLIAM S. HOMMEL, JR.

**BOARD CERTIFIED**

LABOR AND EMPLOYMENT LAW
CIVIL TRIAL LAW
PERSONAL INJURY TRIAL LAW

TEXAS BOARD OF
LEGAL SPECIALIZATION

A PROFESSIONAL CORPORATION

**ATTORNEY AT LAW**

www.hommelfirm.com

1402 RICE ROAD
SUITE 200
TYLER, TEXAS 75701
(903) 596-7100
(903) 596-7464 FAX

WRITER'S EMAIL:
BHOMMEL@HOMMELFIRM.COM

February 9, 2007

Sent Via Facsimile
and Certified Mail/Return Receipt Requested

Mike Espy
EOP Building
819 7th Street NW, Suite 205
Washington, DC 20001
Fax: 202.408.5445

Joseph D. Lane
Lance H. Swanner
Samuel A. Cherry, Jr.
Cochran, Cherry, Givens, Smith, Lane &
Taylor, P.C.
163 West Main Street
P.O. Box 927
Dothan, Alabama 36302
Fax: (334) 793-8280

Mike Espy
Lamar Life Building
317 E. Capitol Street, Suite 101
Jackson, MS 39201
Fax: 601.355.6021

Robert J. Camp
The Cochran Firm, P.C.
505 North 20th Street, Ste. 825
Birmingham, AL 35203
Fax: (205) 244-1171

Richard Celler
284 South University Drive
Fort Lauderdale, Florida 33324
Fax: (954) 333-3515

Re:    Civil Action No. 2:06cv268; *April Agee, et al v. Wayne Farms, L.L.C.*, et al; in the United States District Court for the Southern District of Mississippi, Hattiesburg Division

Gentlemen:

In reviewing the filings in the *Agee* case, I have determined that the following clients signed a fee agreement with our group prior to them signing a consent/fee agreement with your group:

February 9, 2007
Page 2

| | |
|---|---|
| Pamela M. Allen | Decatur |
| Ramona Ramos | Decatur |
| Diane Garner Ricks | Decatur |
| Birda Mae Robinson | Decatur |
| | |
| Alberta K. Anderson | Union Springs |
| Darren Anderson | Union Springs |
| Terrance Anthony | Union Springs |
| Annie Bussey | Union Springs |
| Tomecha O. Canty | Union Springs |
| Jacqueline Cooper | Union Springs |
| Marquetta Cunningham | Union Springs |
| Delores Davis | Union Springs |
| Kirby Davis | Union Springs |
| Helen Ellis | Union Springs |
| Teresa Graves | Union Springs |
| Nicklous Hill | Union Springs |
| Susie Jackson | Union Springs |
| Jessica Jenkins | Union Springs |
| Recike Johnson | Union Springs |
| Rosario Johnson | Union Springs |
| Trellis Jordan | Union Springs |
| Reginia Long | Union Springs |
| Santana McClendon | Union Springs |
| Harvey Cornelius Parker | Union Springs |
| Peggy L. Pitts | Union Springs |
| Betty Randolph | Union Springs |
| Mary Dean Rayburn | Union Springs |
| Aggie Scott | Union Springs |
| John Scott | Union Springs |
| Mayola Shelley | Union Springs |
| Charlotte Smith | Union Springs |
| Dessie Smith | Union Springs |
| Janekia Smith | Union Springs |
| Kimberlyn Denise Sparks | Union Springs |
| Carlos Stanley | Union Springs |
| Lanethia Still | Union Springs |
| Sherry Tarver | Union Springs |
| Mary E. Thomas | Union Springs |
| Eula Townsend | Union Springs |
| Terrance Warmack | Union Springs |
| Mary J. Washington | Union Springs |
| Callie M. Williams | Union Springs |

February 9, 2007
Page 3


Alan L. Williamson            Union Springs

Demand is immediately made that you, your law firms and any of the other members of your legal team decline representation of each and every person listed above and agree to transfer their case to the *Agee* case immediately based upon our group's prior agreement with these people. You should also provide the undersigned with a copy of the letter of declination and the motion to transfer these individuals to the *Agee* case as soon as possible. If your group ignores this demand, our group will be forced to file a motions in the *Bolden* and *Anderson* cases to transfer these individuals to the *Agee* case based upon our prior representation agreements. We will also seek the appropriate relief from the state bar associations in Mississippi, Alabama and Florida.

The following clients have also signed fee agreements with our group; however, we have determined that they had previously signed an agreement with your group. We will be immediately withdrawing from representation from these individuals and will provide you a copy of the letter declining representation and we will be taking no further action on their behalf. We will also file the appropriate motion to withdraw representation of these individuals, considering the fact that a separate case has been filed to protect their rights.


Pratuangtip Bady            Decatur
Woosie Williams             Decatur
Tiffany M. Pugh King        Union Springs
Laurie A. Willis            Union Springs
Christine Youngblood        Union Springs


Your prompt attention to this matter is appreciated.

Very truly yours,

William S. Hommel, Jr.

WSH/sm

cc:    Robert L. Salim
       A. Craig Eiland
       Roger Doolittle
       Seth Hunter
       Michael Josephson

**EXHIBIT 2**

# THE COCHRAN FIRM

BIRMINGHAM

505 NORTH 20TH STREET • SUITE 825 • BIRMINGHAM, ALABAMA 35203
TELEPHONE: (205) 244-1115 • FAX: (205) 244-1171
WWW.COCHRANFIRM.COM

February 13, 2007

**VIA EMAIL AND OVERNIGHT DELIVERY**
William S. Hommel, Jr., Esq.
1402 Rice Road
Tyler, Texas 75701

RE: Alleged Dual Representation

Dear Bill,

Thank you for your letter dated February 9, 2007. We are happy you have conceded that you do not represent our clients that retained our services prior to you contacting them. Our position regarding the referenced forty-two individuals you claim to represent is unchanged. Our clients were questioned by our staff upon initial interview to ensure they did not have prior representation. If they answered in the affirmative that they had already signed up with another firm they were not taken on as a client. Therefore, every one of our clients in our eyes was unrepresented. To the extent your clients did or did not send you a letter terminating your services, I am sorry they have caused you an inconvenience.

As suggested on two other occasions, we feel a joint letter to all clients in dispute is the most ethical way to ensure parties are represented by their counsel of choice. We have conferred with the Alabama State Bar's Ethics Section and they agree with our position. This is especially true in light of our differing legal strategies. As we have commented before, your certification is not appropriate on a national basis, as demonstrated in Fox v. Tyson and Anderson v. Cagles, and it does not follow the original intent of the Fair Labor Standards Act. On a national or regional basis, individuals are not similarly situated due to differences in management, collective bargaining agreements, payroll practices, facilities, etc. To reject current Cochran clients in order to send them to you knowing your efforts are likely to be unsuccessful would violate our duty to our clients.

Furthermore, if you continue down this path, insisting on pursuing a national class which includes our clients, we will be forced to enter a Motion to Intervene to explain in detail to the Court why your action should not move forward on a national basis.

Please contact me to discuss the drafting of a joint letter to notify the forty two clients with alleged dual representation. We do not want to work against you but instead

ATLANTA • CHICAGO • DALLAS • DOTHAN • HUNTSVILLE • JACKSON • LAS VEGAS • LOS ANGELES
MEMPHIS • MIAMI • MOBILE • NEW ORLEANS • NEW YORK • ST. LOUIS • TUSKEGEE • WASHINGTON D.C.

prefer cooperation. When we last talked you were going to submit a proposal related to transferring Alabama clients to the four actions pending in Alabama. I assume you are no longer interested in making such a proposal? Again, for those clients that select your firm as a result of our joint letter we will transfer them to your suit but we will still be forced to intervene to protect our clients.

Sincerely

Robert J. Camp

**Robert Camp**

| | |
|---|---|
| **From:** | Robert Camp |
| **Sent:** | Tuesday, February 13, 2007 3:00 PM |
| **To:** | 'bhommel@hommelfirm.com' |
| **Subject:** | 2/9/2007 Response |



DOC021307.pdf
(49 KB)

                Bill,

For your convenience please see the attached.  You will receive a hard copy via overnight
delivery.

Robert

From:   Origin ID: CZCA  (205)244-1115
Byron Perkins
Cochran Firm-Birmingham
505 North 20th Street
Suite 825
Birmingham, AL 35203


FedEx.
Express

Ship Date: 13FEB07
ActWgt: 1 LB
System#: 9403865/INET2600
Account#: S *********

CL301216672/425

**Delivery Address Bar Code**

SHIP TO:   (903)596-7100          **BILL SENDER**
**William Hommel**
**William S. Hommel**
**1402 Rice Road, ste. 200**

**Tyler, TX 75701**

Ref #
Invoice #
PO #
Dept #



**STANDARD OVERNIGHT**                **WED**
                                      Deliver By:
TRK#   **7981 0702 4025**   FORM     **14FEB07**
                            0201
                                         **SHV**      AA

**75701**   -TX-US

**XH TYRA**

---

Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**EXHIBIT 3**

# THE COCHRAN FIRM

### BIRMINGHAM

505 NORTH 20TH STREET • SUITE 825 • BIRMINGHAM, ALABAMA 35203
TELEPHONE: (205) 244-1115 • FAX: (205) 244-1171
WWW.COCHRANFIRM.COM

March 2, 2007

**VIA EMAIL AND OVERNIGHT DELIVERY**
William S. Hommel, Jr., Esq.
1402 Rice Road
Tyler, Texas 75701

RE: Alleged Dual Representation

Dear Bill,

As you know we responded to your February 9, 2007 letter on February 13, 2007. In that letter we requested that you contact us so we could work in both our clients' best interests and ensure individuals have their counsel of choice. We proposed a joint letter as prescribed by the Alabama State Bar's Ethics Section. To date we have not heard from you.

Please contact us to discuss the joint letter or confirm that your inaction means you are not interested in a joint letter and that you feel it best that this confusion continue.

Sincerely yours,

Robert J. Camp

ATLANTA • CHICAGO • DALLAS • DOTHAN • HUNTSVILLE • JACKSON • LAS VEGAS • LOS ANGELES
MEMPHIS • MIAMI • MOBILE • NEW ORLEANS • NEW YORK • ST. LOUIS • TUSKEGEE • WASHINGTON D.C.

**Robert Camp**

| | |
|---|---|
| **From:** | Robert Camp |
| **Sent:** | Friday, March 02, 2007 8:33 AM |
| **To:** | 'bhommel@hommelfirm.com' |
| **Subject:** | Update |



DOC030207.pdf
(20 KB)

Please see the attached letter.   Hard copy to follow.


Robert

From:   Origin ID: CZCA   (205)244-1115
Robert Camp
The Cochran Firm Birmingham
505 North 20th Street
Suite 825
Birmingham, AL 35203

**FedEx**
Express

**E**

CLS#1216172/23

Ship Date: 03MAR07
ActWgt: 1 LB
SystemId: 9403865/INET2600
Account#: S *********

**Delivery Address Bar Code**

Ref #
Invoice #
PO #
Dept #

SHIP TO:   (903)596-7100          BILL SENDER

**William Hommel, Jr.**

**1402 Rice Road**

**Tyler, TX 75701**





**STANDARD OVERNIGHT**                          **MON**
                                        Deliver By:
TRK#   **7990 9681 7969**    FORM      05MAR07
                             0201
                                        **SHV**    AA

**75701**    -TX-US
RES                          **XH TYRA**

---

Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.